Agilight, Mr. Rainhill. Good morning, Your Honors, and may it please the Court. There are three groups of issues in this appeal. The first group involved the insulation displacement connector, the second group involved the shape of the lens, and the third group involved the overmolding process. We submit that at each turn, the District Court here reversibly erred in applying too narrow a construction of the claims in looking at the accused devices such that summary judgment was improper here. Let me turn first to the insulation displacement connector issues, which this is the only basis for the stipulated summary judgment for the 771 and the 140 patents. Everyone agreed here, the District Court judge found, that there was a plain and ordinary meaning of insulation displacement connector. It was broad and encompassed a number of devices. The argument that Agilight makes and the construction the District Court adopted here was to essentially construe that term to be limited to the preferred embodiment plus some items. Agilight contends that was appropriate because we have a definition by implication. I would submit this Court's made it clear that definition by implication is something that requires very clear and unmistakable language in the intrinsic record. Not only do we not have that here, I would argue we have the opposite. We have clear indications that a narrower construction wasn't intended. One, we have a dependent claim, claim 12 of the 771 patent, which adds limitations directly found in the District Court's construction. Four connectors, three conductor wires. Clearly the patentee is signaling with that dependent claim that it didn't intend the narrower construction to the broad term. We also have the prosecution history, which Agilight relies on. We submit that fully supports our premise where the examiner, in looking at an item prior art, points to a simple pin and says that is an insulation displacement connector. We also do not have any language I would submit in the specification that suggests that the patentee viewed the disclosed insulation displacement connector as the invention or anything like that. Applying the broad definition, I don't think there is any dispute given the stipulation that summary judgment of non-infringement was not proper. The second group of issues involves the shape of the lens. This implicates two claim terms. The one on which the District Court ruled was the term substantially ellipsoidal inner profile. As an alternative ground, Agilight has also raised the issue of the outer profile, generally spherical. The parties actually stipulated to the construction of substantially ellipsoidal inner profile. And Agilight contends that that stipulation, which GE obviously was perfectly happy with. Judge, your argument. Go ahead, Chief. What's the meaning of the term an in this phrase, an inner three-dimensional surface? Well, certainly the general accepted meaning throughout patent law is a or an means one or more. That is certainly the understanding we have. It's the only understanding I would submit that flows from the intrinsic record. If you look at Figure 7 of the 896 patent, that is clearly showing me, which by the way is described as a substantially ellipsoidal inner profile. If you look at that profile, it is very clearly not ellipsoidal across its entire inner profile. So any construction of this term has to take into account that disclosure. And to interpret a or an as meaning the entire profile or it must be over the entire profile would read out the only embodiment in the patent, which seems like an unwarranted result here. Certainly not something that GE intended by the stipulation. We have on a few occasions, however, read that a or an to mean one and absolutely only one singular. Does this fit into that category of cases or the more common one that you're trying to find your way into? In each of those cases, Your Honor, there was very clear either statements in the specification or in the prosecution history, which made it absolutely abundantly clear that you departed from the ordinary approach to the word a or an. We have the opposite of that here. We have a clear indication in the specification that a or an cannot possibly mean the entire inner profile. And that is the basis on which Adjulate contends the summary judgment here should be affirmed. We submit that's clearly not the right construction. Once you apply the appropriate construction to stipulate a construction, to looking to see whether a portion of that profile is substantially ellipsoidal, I would submit the evidence is overwhelming that there is at least a disputed issue of fact on that issue with the accused devices. On generally spherical cases. Even if we accepted the alternative reading that it needs to be singular, there still would be a an ellipsoidal surface, wouldn't there? Absolutely. I think the position we're advancing is the more rational reading of this. But even if you read it the other way, again, reading the claim in light of the specification, which we're told we have to do that, there's no way to get to a result that Adjulate is pushing the district court team to adopt here without ignoring that fact that you just alluded to. So if the stipulated construction applies to the entire inner surface, what portion would you say that it does apply to? Any portion? Well, I don't think the claim specifies what exact portion it has to apply to. I think the claim really requires that a portion of the inner profile be substantially ellipsoidal. And the stipulation really, frankly, defines what an ellipse is. You can pull that definition out of any mathematical textbook or Wikipedia or anything. It's not a controversial definition. But aren't you asking us to redefine the word or the term inner profile just to include the profile that fits your argument? No. Elliptical profile. I think the claim fairly read means a portion of the inner profile. We know what the inner profile is. The entirety of the inner profile in the accused devices and in the claimed devices is not, I don't think, is in dispute. It's just a question of how much of that profile has to be substantially ellipsoidal. So what does substantially define? Ellipsoidal. Ellipsoidal. Yes. It has to be substantially ellipsoidal. Yes, and in fact, if you look at the words in the agreed construction, what it says is an inner three-dimensional surface where the sum of the distances from two focal points and the points on the inner surface is substantially constant. Correct. So part of the inner surface would not be ellipsoidal. Is that right? It certainly allows for that. It allows for deviation? Yes, absolutely. So how much deviation are we talking about? Well, in this case, I don't think we have to answer that question because there is no dispute that a meaningful and substantial portion of that accused inner profile is substantially ellipsoidal. And in fact, their own expert talks about the fact that the portion we contend is substantially ellipsoidal is meaningfully contributing to the beam widening. I suppose you could have a theoretical situation where you'd have such a small portion of it that you couldn't discern it or that that portion wouldn't be functioning to help widen the beam. That's not the case we have here at all. And I don't think we have to go to that definition. I think that perhaps might require a debate between experts if you had a very small portion. That's not the case we have. So let's say the inner profile is 99% rectangular and 1% ellipsoidal. You would have us to reject the 99% of the profile and just focus on the 1% that's ellipsoidal? I think in that case, again, you would have to – I don't know that I can answer that hypothetical in the abstract. The claim, I would argue, as long as that portion, that 1%, is substantially ellipsoidal and is functioning to assist in the widening of the beam, I would argue that meets the claim. You would say that that supports your argument that the 99% should not be considered. Did you present any expert evidence to support that argument? Well, we didn't need to because that's not the situation we have in this case. No, but you do have part of the inner profile that's conical in shape. Absolutely. Just like in the claim device, you have part of the inner profile that's curved outward. It's worse than conical in some ways at the bottom. So I would argue if you put figure 7, and we did this, if you put figure 7 right against the images of the accused lens, they're very, very similar. So we're not at that outer edge. Did you assert doctrine of equivalence on this? We did not. What about the covered dome? Does it have an opening? So this is moving to the molding patent, annular gasket and generally hollow member. I would argue absolutely. If you think about the structure in the accused device here, it is very much like a gasket where you put a lens, you mold the lens over the top of the gasket, then you put that in and drop the mold down on top of it. If you strip the lens away for a second, there'd be no argument there's an opening there. Putting a cup-like lens over the top of an opening does not eliminate that from being an opening. I was sort of thinking about if a running back runs through an opening in an offensive line and there's a linebacker behind it, you wouldn't say there isn't an opening there because there's a linebacker. You might say the opening closed up when you hit the linebacker, but there's still an opening there. It seems really strange to refer to the inner surface of a concave structure as being an opening. Like I look at a teacup. Does a teacup have an opening? No, that just doesn't sound right to me. That doesn't make any sense at all. A teacup doesn't have an opening, right? The teacup holds water, but it's not an opening in the sense of a gasket. And I guess my question to you is, isn't this a question of claim construction which you didn't appeal? Because in the summary judgment order, the district court made it crystal clear that the inner portion of a concave surface cannot qualify as an opening. Do you think that was a factual rendering on his part? Because it reads to me like part of claim construction. I think we did appeal the claim construction of annular gasket, but we were actually okay with the words that the district court used when he construed annular gasket because none of this is in his construction of annular gasket. When he applied annular gasket to the accused device in the summary judgment process, that's where we got the one and only one opening. The space under the lens or under the teacup, as you say, is not an opening, and then a lens is not a gasket. That's where that showed up. We've definitely appealed that, and that's all over our briefing. I would submit that the question really is not is the area under a teacup an opening, but it's not a teacup alone. If I had a piece of paper here and I cut a hole in it, you wouldn't argue for a second that that's not an opening. If I put a teacup over the top of that hole, it doesn't eliminate that hole from being an opening. In fact, if you read the patent, it's talking about the opening being sufficient to surround it. No, but that's not part of the gasket. It isn't that it ceases to be an opening. It's that the paper has an opening, but the dome doesn't have an opening. You've got to prove that the dome is the gasket, and the gasket is the part that has to have the opening. In your hypothetical, you failed to prove that. We're not pointing only to the lens dome as the gasket. The gasket is the optic structure, which has three domes and is made of plastic material that is deformable. So when the mold comes down over the top of that, the mold has those three cup-shaped what we would call generally hollow numbers. It's coming down over the top, and around the edges of each one of those teacups, it's pressing against the plastic material that's flat. So what they've done here is they've taken an annular gasket just like in the patent. They've spread it out to have three holes instead of one, and it's rectangular. It's about that big. We have images of it in our briefing, and they've put a lens cover over it. The way this thing works is at the interface, the bottom interface of the gasket and lens, it's curved up like this. When the mold presses down on it, it seals that area from allowing any of the overmold to come in. Oh, I didn't doubt that you could have a doctrine of equivalence argument that it functions in the same manner and affects the same result, but you didn't make one. No, and I don't think we need to. The definition of annular gasket, or the judge rejected the argument in claim construction that it had to be planar. I mean, there are a lot of gaskets that are not flat. They can be O-rings. I mean, there are gaskets of all kinds of shapes. And the gasket here is, it is very much a flat material with three lenses sitting on top of it. And in the molding process, and remember, these claims don't talk about a lens. They just talk about an annular gasket. In the process of molding here, that interface there is very much functioning to seal and protect the LED, which is sitting in that opening of the teacup. It's sitting protected in there by the pressure being applied around the rim of the cup. So, opening can have a lot of different meanings, but just viewed in the whole context of the pen, especially viewed in the context of the term annular gasket, how can you say that the opening can be such as a teacup? Again, I don't think by placing that lens over the opening, it eliminates it from being an opening. It is functioning exactly... You are arguing that a croissant is a donut as a district court said. No, what we're arguing is a... He's arguing a teacup is a donut. No, not exactly. Kind of making me hungry, but... The simple point really is that the opening that was there in the flat part doesn't go away because you put a lens top over it. I see that I'm out of time. Thank you, Mr. Rainey. We'll restore Mr. Rainey's rebuttal time, and would you give Mr. Powerstein an extra four minutes if he needs to use it? May it please the Court. Your Honor, to begin where Mr. Rainey ended, the question of an opening is not one which this Court needs to write on a clean slate. Although we didn't cite it in our brief, I've come across the case of Fujifoto against the ITC at 386 Bedford 1095, in which this Court addressed what constitutes an opening, stating that an opening is a hole, breach, or aperture, and in line with the teacup discussion, rejecting the notion that a bulge in a camera cover, which created the same sort of convexity we have here, was an opening. We would submit to the Court that an opening is what we all know it to be, a hole, an aperture, a passage, and there is no such thing in this case, Your Honors. What we have here is simply the convex lens piece. But it's open to receive the LED, isn't it? There is a space that receives the LED, yes, Your Honor. And that puts this in a considerably different context than the case you're citing to us, right? Now, you know, drawing upon different technology and different context to define a term defeats you from the outset, doesn't it? Doesn't meaning always depend on context? I think so, Your Honor. But by analogy here, they were trying to say there that because there was a bulge that had a space in it, it was an opening. And that's exactly, to me, what GE is contending here, that the bulge convexity in the lens cover constitutes an opening. But it's open, it's an aperture that receives the LED. Why isn't that, in the context of this, an opening? Your Honor, in our view... This technology, it's open for every purpose it needs to be open, to receive the LED and to keep it sheltered there as the process proceeds. Your Honor, I believe if we turn back to the specification in the drawings and we look at the gasket that was depicted there, which is more or less a standard sort of gasket, a flat device with an open hole in the center, which comes down around the LED optoelectronic device. And all you did was combine that with the next step, which puts a covering over the top. You did them in one step instead of two, which I would tend to agree with my colleague may be a doctrine of equivalence question. But couldn't it just as easily be seen as how you define an aperture, an opening? Your Honor, I believe in the light of the specification and the drawings and the patent and the court's claim construction order, an opening here requires something more than the simple convexity or teacup. And as the court noted, we don't have a doctrine of equivalence case here. But it's open for every purpose it needs to be open, right? I don't believe it's open, Your Honor. I don't believe that the void within a convex surface can be called an opening, as I understand the term to mean. So we would be of the opinion that the opening is missing. But that's only one of the problems we have with the argument that they've made on the molding patent. We also contend that the generally hollow member is lacking. And more importantly, or as importantly, that the patent claims clearly require a seal between the edge of a generally hollow member and a gasket. We have no such seal between an edge of a generally hollow member and a gasket. And furthermore, the edge seal claimed in the patent has to keep the molding material from covering the optoelectronic device. In our process, we have in effect a bowl that comes into a socket. And the two sides of the bowl and the socket meet. But there is no edge sealing. And furthermore, looking at the drawings depicted in our brief, the point where the molding material is kept from reaching the optoelectronic device is where the PCB, printed circuit board, and the lens piece come together, not where the socket in our mold and the lens piece have the sides that fit together. That join between the sides of those two surfaces keeps material from flowing over the lens, but it's not there to keep it from the optoelectronic device. For all those reasons, we believe that the trial courts grant a summary judgment on the molding patent, the 055 patent, was appropriate and should be upheld. I'd like to speak next to the lens patent. In my view, GE is seeking to disregard the agreed construction and in essence to collaterally attack it, which in the Versada case and others, this court has taught cannot be done. The agreed construction doesn't specify the entire inner surface. It isn't clear to me that the agreed construction requires the entirety of the inner portion to be elliptical or substantially elliptical. So what is it that they're trying to disavow in the agreed upon construction? To me, Your Honor, we begin with the words asubstantially ellipsoidal inner profile, which I read to mean the inner profile of the lens. I don't know how you can pick and choose amongst different portions of it. And we've defined that to mean an inner surface. Well, you say you don't know how you can pick and choose different portions of it, but that's exactly what the patent itself did using identical language. The language that describes the figure, I'll grab the right patent, says exactly that, figure, which you probably know better than I do. Which figure is it? Seven, I believe. Yeah, I knew you'd know which one I was talking about. Figure seven, 152, is an elliptical inner surface. And so that is virtually identical language, yet there cannot be any dispute that when you look at 57, the entire inner surface is not substantially elliptical. Because, I mean, look at the bottom of the bell curve. There's no argument that's elliptical. You're not claiming that's elliptical. So why is it when they agreed to almost the identical language that they have in their very patent, are we to presume that they were agreeing to something quite substantially different than what they disclosed? Your Honor, I'm not asking for any presumption as to what they were agreeing to. Our intention was, will be used, the words inner profile, inner surface, and the points on the inner surface being substantially constant that we were speaking to the entire inner surface of the lens. Well, that may well have been your intention, but it clearly wasn't theirs, and it doesn't appear to be manifest to me in the words that appeared by the district court, at least given the fact that they tracked exactly N. For that matter, interestingly, when they talk about 152, by the way, they say N ellipsoidal inner profile. They don't even use substantially. So you look at it, you know, the substantially part isn't even there. I mean, they're saying this is N ellipsoidal inner profile. Your Honor, I understand that argument, but, again, I believe the words require that the entire inner profile be taken into account. But you want to read the word entire in. So that's not what the construction said. That's not what you all agreed to. It may be what you wanted and what you thought you were getting, but I'm not sure that the construction necessarily requires that. Well, Your Honor, it says a substantially ellipsoidal inner profile. I read that to mean the entire inner profile. Well, the problem is the patent also says N ellipsoidal inner profile, and yet that's clearly not an entirely ellipsoidal inner profile. In addition, Your Honor, as a matter of summary judgment. Doesn't N mean one or more? It may well, but I don't know that that answers the question as to whether that. Well, doesn't it? Because there is N ellipsoidal surface on your accused device. We don't agree with that first, Your Honor. You don't? What am I missing here? I think I see an ellipsis there in the upper conical portion. As Professor Sassion explained in the affidavit in the summary judgment evidence, we have a circular portion on top of a cylindrical portion. If you combine those, the circular and cylindrical parts, that's not an ellipsoid. Well, you're reading again. You're reading it so that the entire inner surface has to be considered, but it doesn't say that. It just says there has to be N ellipsoidal inner profile, and if that is not the entire inner profile, then you lose, right? I don't believe so, Your Honor. Oh, well, why don't you lose if it's not the entire thing? Because then you don't get to call your cylinder into play. Well, but quite simply, Your Honor, I don't think that the circular portion, a spherical curve, is an ellipsoid. Well, that's a question of fact. It doesn't have to be an ellipsoid. It has to be substantially elliptical, right? Ellipsoidal, actually, is the word. So it doesn't even have to be a perfect ellipse in the way a mathematician would understand it. So why isn't it a question of fact about whether a circle is substantially elliptical? The question, Your Honor, under the construction would be whether you can say of a circle that the distance from two focal points to the points on the circle is substantially constant. That's an ellipse, then. You're talking about two points. You're not talking about one point. One point would make it a circle. Two points makes it an ellipse. Correct, Your Honor, and I don't believe, then, that a circle is an ellipse. I think those are two different things in the matter of geometry. Now, I'd also note here that there's no evidence that was tendered by GE to satisfy this definition. They didn't offer an opinion from an engineer who says it can be said of this inner surface that the distance from two focal points to the points on the inner circle is substantially constant. They simply didn't put on proof of that. Additionally, Your Honors, we believe that the generally spherical outer profile limitation is not met. That required an outer three-dimensional surface where the points on the surface are generally equidistant from a center point. We submitted summary judgment evidence in the form of Professor Sasian's affidavit that it simply is not the case that the distance from the points on the outer surface of our lens to a center point is substantially constant. There is no rebuttal of that in the summary judgment record, again making summary judgments. Was the limitation substantially ellipsoidal inner profile, was that added during prosecution? I believe it was, Your Honor, yes. So what effect does that have on this construction dispute we're having? In my opinion, the fact that they added that requires that they satisfy that limitation now. I'm understanding your question correctly, Your Honor. I may not be. No, that's fine. So we submit that both the substantially ellipsoidal inner profile and the generally spherical outer profile on this summary judgment record were not shown, and there was no genuine issue of material fact on those points. Should I read your reluctance to reach the issue that Mr. Rainey started with as an admission of weakness on that point? We still have six minutes to go, Your Honor. I'm going to get to that next. Your Honor, our argument on that point, and I'll address it now, is that they have chosen to act as their own lexicographer by implication. The two strongest cases for us in Allpander are the Wang case and the Bell Atlantic case. But aren't there an awful lot of imported limitations here? Two-part housings, four electrical terminals, enclosing conductors, all of that is hardly found in the claim language, is it? Certainly, Your Honor. In Allpander, I would have to say that the four-terminal limitation that I believe the trial court read into... Where does it come from? I think it came from a dependent claim, and so I think that part is probably a problem. And that's probably a problem. Quite candidly. Don't you have an even larger problem as you start to recognize the breadth of this claim term? Your Honor, I think this court has recognized that you can limit a broad claim term. The Bell Atlantic case said that you can redefine a term by implication, and this court in Teleflex took that to say that although the ordinary meaning of a claim term might be broader, the patentees can define a mode by implication. But I don't think that case would have featured the same instances of claim differentiation here with Claim 12 incorporating as a dependent claim things which the district court reads into the broader term. I don't think we'd have the prosecution history that we have in this case and that case. Don't you have a pretty steep uphill climb here? Your Honor, it's a difficult argument, no doubt about that. But we believe that taken as a whole, when you read the description and the specification, the only thing they enable is this lengthy, detailed IDC connector. Yeah, but one of skill in the art knows what IDC connectors are and the broad range of possible connectors. So why do they have to enable every IDC connector? I don't know that they have to enable every IDC connector, Your Honor, but the question to me is what did they enable? You didn't raise this argument, though, did you? I thought we were talking about how to construe the claim, and now you're telling me that I should construe the claim contrary to its plain meaning because if I don't, the spec will not enable the broader construction, and therefore the patent claim will be invalid? Is that what you're now arguing? I'm trying to understand where you're going with the enablement point. Your Honor, I think the Lange case tells us that enablement is relevant to construction of the claim terms. It's certainly a different question to some extent, but as I read Lange, it says that that's a relevant consideration. But as I understand it, basically the parties have both agreed that one of skill in the art knows there's a broad range of IDC devices, right? Yes, Your Honor, and in fact, in the prosecution history, the examiner noted that it would have been obvious to use an IDC connector with overmolding, and so they don't have a patent on that, and yet they come to us and say that the simple screw that we use to attach something to a wire is within the meaning of these claims, which to me is exactly what the examiner was saying would have been obvious. That's because the purpose of the screw is to displace the insulation on the wire, and that's exactly what an IDC is. That's correct, Your Honor, it does that. Again, this is a difficult argument for us, but I believe that by teaching what they teach in the specification, and repeatedly said... But in every instance that it mentions IDC connector in the specification, it's prefaced by the language, in one embodiment. That's correct, Your Honor. In one embodiment is in the preface every time it mentions that term. So how can we then read that as the invention when they called it themselves an embodiment? Your Honor, I think that these courts' teachings, again in Wang, are that just throwing in the word preferred does not broaden the claims beyond their support in the specification. We're of the view here that to broaden them, that would be exactly what we're doing if we just take, well, they say preferred embodiment or depicted embodiment, I believe is the wording that they used. I believe that they are attempting to broaden the claims beyond what's shown in the specification. And the Wang case, to me, teaches that that's not the way to do things. Well, you're saying they're attempting to broaden the claims, but we give claims their plain meaning absent clear and unmistakable evidence to the contrary, either in the form of disclaimer or lexicography. So you know what? If they're going to die via enablement or written description, they're going to have to swallow what they bite off. And that's a fight for a later day. But I don't see how that's at all relevant to whether or not we ought to give IDC connector its plain meaning. I don't see how the scope of enablement of the patent is at all relevant to a question of plain meaning. There is no dispute here over plain meaning, correct? As to the IDC connector? Well, you already agreed to it. So if I have to find the place in your brief where you did, that the plain meaning of IDC connector, one of skill in the art would understand, applies to a range of different devices and is not limited to the one in the spec. You did both agree to that, right? I believe we may have, Your Honor. I really don't recall right now the language in the brief to which you're referring. Your Honor, in light of all of the issues in this case, Your Honor, we believe that summary judgment was appropriate as to each of the three or four patents in suit and that the district court did a great good job of analyzing the issues and that his summary judgment ruling should be affirmed in all respects. Thank you, Mr. Powerstein. Thank you, Your Honor. Mr. Rainey, you have your rebuttal time. Mr. Cordes, any questions? I have no further comments. All right. Thank you, Mr. Rainey. Thank you.